UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT FRANCIS SANTORE,<br>Plaintiff | )<br>)<br>) | CIVIL ACTION NO. 4:22-CV-671 |
| v. | )<br>)<br>) | (ARBUCKLE, M.J.) |
| NORTHUMBERLAND COUNTY, *et al.*,<br>Defendants | )<br>)<br>) | |

MEMORANDUM OPINION
*Northumberland Defendants' Motion to Dismiss (Doc. 10)*

## I.  INTRODUCTION

Robert Francis Santore ("Plaintiff") has severe glaucoma. When he entered Northumberland County Prison in 2018, he had already lost all vision in his left eye. He required multiple prescription-strength eyedrops to preserve the vision in his right eye. Plaintiff contends he often was not given access to those prescriptions while incarcerated, and as a result has lost almost all vision in his right eye.

On May 6, 2022, Plaintiff initiated this civil action alleging claims under the Eighth Amendment (Denial of Adequate Medical Care), Americans with Disabilities Act (Failure to Accommodate) and Rehabilitation Act (Failure to Accommodate) related to the lack of access to his prescribed medication while incarcerated from December 2018 through July 2021.

Currently before the Court is a motion to dismiss Plaintiff's claims against Defendant Northumberland County. (Doc. 10). Along with this motion, the

Northumberland County Defendants' filed a brief in support. (Doc. 11). Plaintiff filed a brief in opposition. (Doc. 13). The Northumberland County Defendants did not file a reply. This motion is now ready to resolve.

For the reasons explained herein, Northumberland County Defendants' motion (Doc. 10) will be DENIED.

## II.  BACKGROUND & PROCEDURAL HISTORY

Plaintiff has glaucoma. (Doc. 1, ¶ 13). In 1987, when he was twenty-five, Plaintiff lost all vision in his left eye. (Doc. 1 ¶¶ 14-15). Vision, once lost due to glaucoma, cannot be regained. (Doc. 1, ¶ 13). In order to preserve the vision in his good eye, Plaintiff was prescribed multiple eye drops by treating physician Jing Cheng Zhao, M.D. (Doc. 1 ¶ 17).

Plaintiff was incarcerated in Northumberland County Jail from December 2018 through July 2021. (Doc. 1, ¶ 12). Plaintiff continued to see Dr. Zhao during his incarceration. (Doc. 1, ¶ 23). He alleges, however, that some of his appointments with Dr. Zhao were cancelled or missed because there was not enough staff at the prison to transport Plaintiff to the appointments. (Doc. 1, ¶ 27).

Plaintiff alleges that PrimeCare Medical Inc. is responsible for dispensing, distributing, and administering medication to inmates in Northumberland County Jail. (Doc. 1, ¶ 18).

Plaintiff alleges that, during his time in Northumberland County Jail, he rarely received the eye drops as prescribed by Dr. Zhao. (Doc. 1, ¶ 20). Plaintiff repeatedly submitted medical call slips requesting his eye drops. (Doc. 1 ¶ 21). During medical appointments with Dr. Zhao, two corrections officers (Defendants Bressi and Barley) were advised of the seriousness of Plaintiff's condition and were instructed that Plaintiff needed to receive his eye drops as prescribed. (Doc. 1, ¶¶ 25-26).

Plaintiff alleges that, in July 2020, his prescription was increased to three times daily. (Doc. 1, ¶ 28). Once increased, the drops were similarly not administered as prescribed. (Doc. 1 ¶ 29).

Dr. Zhao prescribed laser surgery for Plaintiff's right (good) eye. (Doc. 1, ¶ 30). Plaintiff alleges that Northumberland County or PrimeCare refused to approve the surgery. *Id.*

On May 6, 2022, Plaintiff initiated this civil action. (Doc. 1). As of that date, Plaintiff had four percent vision remaining in his right (good) eye. (Doc. 1, ¶ 32). In the complaint, Plaintiff names the following Defendants:

(1) Northumberland County;

(2) PrimeCare Medical, Inc.;

(3) Jamie Bressi;

(4) Richard Barley; and

(5) John Does #1-10 (doctors and nurses employed by PrimeCare).

Plaintiff asserts an Eighth Amendment denial of adequate medical care claim against all Defendants. (Doc. 1, ¶¶ 33-53). Plaintiff also alleges that the County's failure to administer Plaintiff's medications as prescribed violates the Americans with Disabilities act (Count II) and Rehabilitation Act (Count III).

As relief, Plaintiff requests money damages, attorney fees and costs.

On July 6, 2022, Defendant PrimeCare Medical filed an Answer. (Doc. 9). On July 8, 2022, Defendants Barley, Bressi, and Northumberland County filed a motion to dismiss. (Doc. 9). Along with their motion, the Northumberland County Defendants filed a brief in support, in which they argue that all claims against Defendant Northumberland County only should be dismissed. (Doc. 11). On July 19, 2022, Plaintiff filed a brief in opposition. (Doc. 13). Defendants did not file a reply.

### III. LEGAL STANDARDS

#### A. MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for "failure to state a claim upon which relief can be granted." To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth; and

(3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[1]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[3] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[4] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[5]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[7] This "presumption of truth attaches only to

---

[1] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).
[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[4] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).
[5] *Associated Gen Contractors of Cal. v. Cal St. Council of Carpenters*, 459 U.S. 519, 526 (1983).
[6] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010).
[7] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.' "[8] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[9]

### B. MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

The United States Supreme Court has held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.[10] Municipal liability under § 1983, however, may not be premised on the mere fact that the municipality employed the offending official (i.e., through the application of *respondeat superior*). Instead, a municipality may be liable under § 1983 only when its policy, practice or custom inflicts the injury.[11] This requirement distinguishes acts of the municipality from acts of its employees, thereby limiting liability under § 1983 for acts which the municipality is actually responsible.[12]

As this court has previously explained:

> A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.' " *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). "[A] policy or custom may also exist where

---

[8] *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).
[9] *Schuchardt*, 839 F.3d at 347.
[10] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).
[11] *Id.* at 694.
[12] *Id.*

'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *Id.* In order to recover from a municipality under this theory of liability, a Plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." *See City of Canton*, 489 U.S. at 385.[13]

### C. AMERICANS WITH DISABILITIES ACT & REHABILITATION ACT CLAIMS

Title II of the Americans with Disabilities Act ("ADA") prohibits discrimination by public entities.[14] The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[15] Section 504 of the Rehabilitation Act ("RA") similarly states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[16]

---

[13] *McPherson v. Cty. of Dauphin*, No. 1:19-CV-1865, 2020 WL 1558206, at *4 (M.D. Pa. Mar. 24, 2020).
[14] *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-209 (1996).
[15] 42 U.S.C. § 12132.
[16] 29 U.S.C. § 794(a).

"The 'substantive standards for determining liability [under the ADA and RA] are the same.' "[17] Thus, a court may address "both claims in the same breath."[18]

In this case, plaintiff appears to advance a discriminatory theory under the ADA or RA based on a failure to accommodate.[19] "[A] prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities under Title II."[20]

To state a claim under the ADA and RA, Plaintiff needs to allege that: (1) he is a qualified individual with a disability; (2) he was precluded from participating in a program, service or activity, or otherwise was subject to discrimination; and (3) he was excluded or discriminated against because of his disability.[21] "However, 'the ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities.' "[22]

With these principles in mind, we turn to an analysis of this case.

---

[17] *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

[18] *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *see also Strickland v. Delaware Cty.*, No. CV 21-4141, 2022 WL 1157485, at *2 (E.D. Pa. Apr. 19, 2022).

[19] *See McPherson*, 2020 WL 1558206, at *2 (citing *Muhammad v. Court of Common Pleas*, 483 F. App'x 759, 763 (3d Cir. 2012)).

[20] *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019).

[21] *Schiavone v. Luzerne Cty*, No. 3:21-CV-1686, 2022 WL 3142615 at *7 (M.D. Pa. Aug. 5, 2022) (citing *Furgess*, 933 F.3d at 288-89; *Haas v. Wyoming Valley Health Care Sys.*, 553 F.Supp.2d 390, 396 (M.D. Pa. 2008); and *Pierce v. Pitkins*, 520 F. App'x 64, 67 (3d Cir. 2013)).

[22] *Schiavone*, 2022 WL 3142615 at *7 (quoting *Hubbard v. Taylor*, 452 F.Supp.2d 533, 544 (D. Del. 2006), *aff'd* 538 F.3d 229 (3d Cir. 2008)).

IV.    ANALYSIS

In their motion, Defendants Northumberland County, Bressi, and Barley (hereinafter the "Northumberland County Defendants") seek dismissal of all claims against Defendant Northumberland County <u>only</u>, specifically:

(1)    Eighth Amendment Denial of Adequate Medical Care under 42 U.S.C. § 1983;

(2)    A claim under the Americans with Disabilities Act; and

(3)    A claim under the Rehabilitation Act.

A.    THE *MONELL* CLAIM AGAINST DEFENDANT NORTHUMBERLAND COUNTY WILL NOT BE DISMISSED

In Count One of his complaint, Plaintiff alleges that Defendants Bressi, Barley and John Does #1-10 denied him adequate medical care. Plaintiff also alleges that Defendant Northumberland County's policies, customs and practices related to "insufficient staffing," "providing the absolute minimum of health care to inmates," and "refusing to provide prescribed medications for non-medical reasons" were the cause and moving force behind the violation of Plaintiff's Eighth Amendment rights. (Doc. 1, ¶¶46-50).

The Northumberland County Defendants do not dispute for the purposes of this motion that Plaintiff has pleaded a plausible Eighth Amendment claim. Instead, they argue that Plaintiff has not pleaded enough facts to support a plausible claim

that any Northumberland County policy, custom or practice was the driving force behind the violation of Plaintiff's Eighth Amendment rights.

In response, Plaintiff argues that his allegations are enough to proceed at this stage. He asserts that the complaint contains allegations that: (1) he was routinely and systematically denied his prescription medications during his incarceration at Northumberland County Prison; (2) all Defendants, including Northumberland County were aware of his need for medication and refused to provide it; and (3) this was done pursuant to a Northumberland County policy, custom or practice whereby his medication was denied for non-medical reasons. (Doc. 13, pp. 14-15) (citing Doc. 1, ¶¶ 19-32, 38).

Based on these allegations, I am persuaded that Plaintiff's *Monell* claims should be permitted to proceed into discovery. First, Defendants do not dispute for the purposes of this motion that Plaintiff has alleged a plausible Eighth Amendment claim against Defendants Bressi and Barley. Second, Plaintiff has alleged that his medications were not administered as prescribed for non-medical reasons and suggests this failure could have been the result of understaffing. Third, Plaintiff suggests that the prison employees and Defendant Northumberland County were made aware of this issue when Plaintiff filed several institutional grievances. Fourth, Plaintiff contends that this failure was due to a policy practice, or custom. These

allegations, and the reasonable inferences that can be drawn therefrom are enough to support Plaintiff's *Monell* claim at this stage of litigation.

Accordingly, Plaintiff's *Monell* claim against Defendant Northumberland County will be permitted to proceed.

### B. THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT CLAIMS AGAINST DEFENDANT NORTHUMBERLAND COUNTY WILL NOT BE DISMISSED

The Northumberland County Defendants argue that Plaintiff's ADA and RA claims in this case amount to claims of inadequate medical care and should be dismissed because the denial of medical treatment is not a program, service or activity under the ADA or RA.

In response, Plaintiff argues that his ADA and RA claims relate to a denial of reasonable accommodation arising from Defendants' failure to provide Plaintiff with his prescription eyedrops. Plaintiff is correct that courts have found a prison's failure to provide access to prescribed medications is actionable under the ADA and RA because it is considered the denial of a service.[23]

---

[23] *See e.g. McPherson*, 2020 WL 1558206 at *4 (denying a motion to dismiss ADA claim premised on the alleged denial of access to prescribed medications); *Schiavone*, 2022 WL 3142615 at *8-9 (denying motion to dismiss ADA and RA claim premised on a theory that the plaintiff was denied access to prescribed medications); *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 286-287 (1st Cir. 2006) (finding that access to prescription medication is part of a prison's medical services, and thus is a program, service or activity covered by the ADA).

In this case, Plaintiff alleges that he was denied access to prescribed eyedrops for an extended period of time. This claim is premised on the denial of access to medication that had already been prescribed by a physician who provided treatment throughout the period of Plaintiff's incarceration, and therefore amounts to a plausible ADA and RA claim.

Accordingly, Plaintiff's ADA and RA claims against Defendant Northumberland County will be permitted to proceed.

V. **CONCLUSION**

Based on the forgoing, the Northumberland County Defendants' motion to dismiss (Doc. 10) is DENIED. An appropriate order will be issued.

Date: November 29, 2022                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge